**490**

■■■■■■■■■■■■■■■■■■■■■■■■■■■

**James H. SKILLERN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 15, 1972.

Rehearing Denied March 2, 1973.

Aaron F. Overfelt, Bowling Green, for appellant.

Ed W. Hancock, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

James H. Skillern was convicted by a jury on two separate counts of voluntary manslaughter, the jury fixing his punishment at five years in the penitentiary on each count. Skillern appeals from a judgment entered in accordance with the jury verdict. His sole basis for asserting prejudicial error concerns the admissibility of evidence. In our view, he has not established prejudicial error and we are powerless to disturb the judgment.

In the early morning hours of May 9, 1971, four young people, Wallace Kitchens, Sherry Kirby, Jimmy Holman and Alvin Pearson, while returning from a drive to Bowling Green, Kentucky, pulled off of highway 31–W onto a gravel lane to allow Jimmy Holman to answer a call of nature. Skillern's home was located along this lane. Holman got back into the automobile, and, according to the prosecution's evidence, as the car was backing out of the lane, Skillern came up to the moving vehicle shouting and rapped on the driver's window. The driver, Wallace Kitchens, stopped, but again started backing up when Jimmy Holman yelled, "Let's get out of here, Wallace." At this point, Skillern fired a shot through the window on the driver's side.

Kitchens and Pearson, who were sitting in the front seat, jumped out the right side of the car and ran for cover. They testified that as they were running they heard several more shots being fired.

When the police arrived at the scene of the shooting, the automobile was in reverse gear with the motor off and the ignition and lights still on. The glass in the left side of the car had been shot out. Slumped in the back seat were Jimmy Holman, a 22-year-old boy, and Sherry Kirby,

a 16-year-old girl, both shot to death. Both of them had received multiple bullet wounds about the head and shoulders. One bullet had entered the back of Jimmy Holman's neck. In the opinion of the coroner, neck wounds were the immediate causes of the death of each of the young persons. Skillern did not deny killing the two persons but defended on the basis that he was trying to prevent himself from being run over by the automobile. According to Skillern's testimony, these young people created quite a disturbance and directed several threats to the effect that they were going to burn down his house. Two of the prosecution witnesses denied this. Skillern also stated that when he heard the disturbance he called the state police twice but both times received a busy signal. Skillern said he then procured his pistol and went out to the car where the four occupants were sitting and asked "what was going on there." The driver of the car attempted to run him down. Skillern asserted that as a reflex action he fired four or five shots into the automobile at the driver but missed and killed two occupants in the rear seat. The driver of the car and the other front-seat occupant denied that the car ever moved toward Skillern and they said he began firing without provocation. Both of these witnesses also stated that they abandoned the car after the first volley at the car but that a few minutes later additional shots were fired.

 Skillern argues that the trial court committed prejudicial error when the arresting officers were allowed to testify that he refused to make a statement to the police after being arrested, and that further error was committed when these same officers were allowed to relate a conversation they had with him after his arrest. The conversation with the officers was unquestionably voluntary, and with full knowledge of the right to remain silent. The contents of the conversation related to various types of firearms, Skillern's previous military experience, and previous shooting incidents. One of the officers related that Skillern was very cooperative and the other officer said that Skillern was not agitated after the shooting but was polite and well-mannered. On the whole, it appears that the testimony of the officers was an objective presentation of the facts and circumstances of the case within their knowledge. No objection was made to their testimony at any point in the trial or thereafter. Actually, any error in the admission of the evidence was not preserved for review. See Ferguson v. Commonwealth, Ky., 373 S.W.2d 729 (1963). Cf. Hollin v. Commonwealth, Ky., 481 S.W.2d 269 (1972), and Bell v. Commonwealth, Ky., 480 S.W.2d 163 (1972).

 Skillern's remaining claim of error is that the trial court over his objection allowed the prosecution to introduce rebuttal evidence concerning a previous misdemeanor conviction. This conviction was based on an October 30, 1969, incident in which Skillern fired at an automobile traveling on a public road in front of his home. In the brief for the appellant it is contended: ". . . If the Commonwealth had not brought in the previous incident, he might have, and probably would have not made an issue of his reputation so that the Commonwealth could not bring the previous incident in." This contention apparently demonstrates an oversight on the part of Skillern's attorney on appeal who was not a participant at the trial. The truth is that the existence of the previous misdemeanor conviction was injected into the case by Skillern's trial attorney in his opening statement when he said, "The proof will show that when this was all occurring that a group of four college people came out to his home one night and that he shot into the air just to scare them and he was brought into court and fined for so doing."

It seems to us that if Skillern wanted the jury to know of this previous incident in which he was convicted of a misdemeanor as relevant evidence to be considered in his favor, it ill behooves him now to argue that evidence concerning its existence and the

circumstances thereof was inadmissible. The significance of a defendant's making the initial introduction of a past criminal conviction has been considered in Robinson v. United States, 144 F.2d 392 (C.A.6 1944), and in Blair v. Commonwealth, Ky., 458 S.W.2d 761 (1970). Suffice it to say, if the defendant chooses to inject his own previous misdemeanor conviction as a relevant circumstance to be considered in his defense, we see no reason why evidence by the prosecution of the existence of the misdemeanor conviction and its circumstances should be inadmissible. We, therefore, conclude that we are without authority to disturb the judgment.

The judgment is affirmed.

All concur.